UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VOICESTREAM PCS II CORPORATION, d/b/a T-Mobile, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  4:04CV732 FRB |
| THE CITY OF ST. LOUIS, MISSOURI, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court for final determination on the claims of plaintiff Voicestream PCS II Corporation, d/b/a T-Mobile (T-Mobile), raised in its Verified Complaint for Writ of Mandamus, Damages, Judicial Review, and Other Relief.  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff T-Mobile commenced this cause of action in this Court on June 14, 2004, alleging that the manner and method by which defendant The City of St. Louis, Missouri (City), prohibited plaintiff's ability to install a communications facility considered by plaintiff necessary to provide complete personal wireless service in and around the St. Louis area, violated the Telecommunications Act of 1996 (TCA), 47 U.S.C. §§ 332, et seq. In Count I of its Complaint, plaintiff seeks redress under the TCA, and specifically, that the Court issue a writ of mandamus directing the City to grant plaintiff the appropriate permit(s) necessary to

allow installation of the communications facility, and further, that plaintiff be awarded its attorney's fees and costs. Plaintiff requests like relief in Count III of its Complaint, pursuant to Mo. Rev. Stat. §§ 89.110, 536.140. In Count II, plaintiff seeks compensatory damages under 42 U.S.C. § 1983, as well as its attorney's fees and costs, for alleged violations of its constitutional rights. Finally, in Count IV, plaintiff alleges that defendant violated Missouri's Sunshine Act, Mo. Rev. Stat. § 610.010, by failing to provide certain requested public records and/or failing to provide any detailed explanation or justification for not timely providing such records. As relief for such alleged Sunshine Act violations, plaintiff requests injunctive relief, an imposition of a $500.00 fine against the City for each violation, and an award of attorney's fees and costs.

Defendant answered plaintiff's Complaint on July 6, 2004, after which the parties submitted to the Court a Joint Proposed Scheduling Plan in accordance with Fed. R. Civ. P. 16, setting out, <u>inter alia</u>, proposed dates by which certain matters were to be concluded in this cause as well as the earliest date the parties reasonably believed the case could be expected to be ready for trial. Upon meeting with counsel for the parties, the Court adopted, generally, the schedule proposed by the parties in their Plan, including the proposed nonjury trial date of May 15, 2006. (<u>See</u> Case Management Order, filed Sept. 2, 2004.)

On February 28, 2005, the parties, through counsel,

appeared before the Court and announced that they had agreed to submit the matter to the Court on a Joint Stipulation of Facts for Final Determination, upon which, the parties aver, the Court could enter Judgment. The parties also submitted to the Court a proposed Judgment, Order and Decree, requested by the parties to be entered upon the Court's review of the Joint Stipulation of Facts. With leave of Court, the parties filed a Revised Stipulation of Facts for Final Determination on April 20, 2005, as well as a separate proposed Judgment, Order and Decree. Having considered the submissions to the Court, including the Joint Stipulation of Facts and the exhibits appended thereto, the undersigned makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

### Findings of Fact

1. T-Mobile is a corporation in good standing, incorporated under the laws of the State of Delaware with its principal place of business in Bellevue, Washington, and is engaged in the business of providing nationwide wireless personal communication services ("PCS"). T-Mobile is authorized to do business in the State of Missouri.

2. City is The City of St. Louis, Missouri, a political subdivision under the laws of the State of Missouri.

3. The Federal Communications Commission ("FCC") issued T-Mobile a license legally requiring T-Mobile to provide seamless PCS to its customers. As a condition of its license, T-Mobile is

obligated to establish a wireless network that is sufficiently deployed to provide proper reception and communication within the network, including areas within this judicial district and within the City limits.

4. Pursuant to its FCC license, T-Mobile has been and is actively developing, operating and improving a wireless network within this judicial district by placing and constructing personal wireless service facilities at various locations throughout the St. Louis Metropolitan area.

5. As part of the development and improvement of this wireless network, T-Mobile analyzed a location for the placement and construction of a personal wireless service facility consisting of telecommunications antennas and related equipment (collectively, the "Communications Facility") within the corporate limits of the City in order to provide complete personal wireless service to persons residing in, visiting or traveling through the City.

6. Without the Communications Facility, T-Mobile is not able to provide seamless PCS in that a geographic area exists in the City where PCS service is compromised or unavailable.

7. As a result of this analysis, T-Mobile identified the optimal location for the Communications Facility on a site owned by the Southampton Presbyterian Church (the "Church") located at 5347 Nottingham, St. Louis, Missouri (the "Church Site"), which is located in the City.

8. The Communications Facility would consist of

communications equipment that would be located inside the Church building and antennae mounted on the exterior of an existing chimney on the Church building. The antennae, once installed, would not exceed the height of any part of the Church building.

9. Representatives of the City advised T-Mobile that in order to construct and install the Communications Facility, T-Mobile was obligated to apply for and obtain a building permit from the City.

10. T-Mobile completed and filed a building permit application with the City's Division of Building and Inspection on November 14, 2003, for the installation of the Communications Facility on the Church Site.

11. Subsequently the City denied T-Mobile's application for a building permit and informed T-Mobile that it was obligated to obtain a Conditional Use Permit from the City prior to the issuance of a building permit.

12. After the filing of T-Mobile's building permit application, the City interpreted its zoning ordinance to require that T-Mobile's building permit application be subject to a Conditional Use Permit process through the City's Board of Public Service after a public hearing.

13. Under the City's interpretation of its zoning ordinance, the installation of the Communications Facility would constitute the construction of a "utility station" or "utility tower," either of which required the issuance of a Conditional Use Permit by the

City's Board of Public Service.

14. The City treated T-Mobile's building permit application as an application for a Conditional Use Permit in order to install the Communications Facility on the Church Site.

15. The approval of an application for a Conditional Use Permit is governed by Section 26.80.010(E) of the City's Zoning Code, which provides:

> The Board of Public Service shall not approve a conditional use unless the Board finds that the use conforms to the following standards:
> 1. The use will not be detrimental to the public health, safety, morals or general welfare;
> 2. The use will not cause serious injury to the neighboring property by hindering use or reducing or impairing property values;
> 3. The use will contribute to, enhance, and promote the general welfare and convenience of the specific location;
> 4. The use will complement or be compatible with the surrounding uses and will not have a negative impact on adjacent uses or community facilities; and
> 5. The use shall, in all other respects, conform to the applicable zoning regulations and standards, including without limitation the particular regulations and standards stated for particular conditional uses in the various zoning districts.

16. As required by the City, T-Mobile presented its application for the Conditional Use Permit at a public hearing of the City's Board of Public Service on February 5, 2004.

17. On February 5, 2004, T-Mobile presented the City's Board of Public Service with detailed information regarding the proposed

construction of the Communications Facility, the selection of the Church Site and the need for the location of the Communications Facility at this particular location, including the presentation of photographs and radio frequency propagation maps. Representatives of T-Mobile attended the hearing, provided testimony and information, and addressed questions raised by the hearing officer and others.

18. On February 24, 2004, the Board of Public Service denied T-Mobile's application for a Conditional Use Permit for the installation of the Communications Facility, reasoning that:

> (1) The use will be detrimental to the public health, safety, morals and general welfare, (2) The use will cause serious injury to the neighboring property by hindering use or reducing or impairing property values; and (3) The use will not contribute to, enhance, or promote the general welfare and convenience for the specific location.

(Rev. Joint Stip. of Facts, Exh. 1, para. 5.)

19. T-Mobile timely filed an appeal of the denial of its application for a Conditional Use Permit to the City's Board of Adjustment.

20. On April 21, 2004, T-Mobile presented detailed information regarding the proposed construction of the Communications Facility, the selection of the Church Site and the need for the location of the Communications Facility at this particular location, including the presentation of photographs and radio frequency propagation maps to the City's Board of Adjustment.

Representatives of T-Mobile attended the hearing, provided testimony and information, and addressed questions raised by the Board of Adjustment. An RF Engineer and a Licensed Professional Engineer also testified at the hearing in favor of T-Mobile's application. Six individual residents testified against T-Mobile's application, and a letter of opposition from another individual was submitted as an exhibit.

21. The City's Board of Adjustment continued T-Mobile's appeal to the Board of Adjustment's May 12, 2004, meeting to deliberate and vote on T-Mobile's appeal.

22. On May 12, 2004, the City's Board of Adjustment voted to affirm the Board of Public Service's denial of T-Mobile's application for the Conditional Use Permit.

23. On May 20, 2004, the City's Board of Adjustment issued written Findings of Fact, Conclusions of Law and an Order in support of its decision to deny T-Mobile's appeal, specifically finding, inter alia:

> T-Mobile has 12 million customers, 22,000 employees and provides services to 95% of the United States population. Due to weak or no signals in this area, T-Mobile has a need to install additional communication equipment to enhance their cellular reception. This site was the only site in this area that the Appellant believed could fulfill their proposal. Several other locations were unwilling to lease to T-Mobile or did not comply with radio frequency.
>
> Appellant's proposed equipment will be in compliance with FCC rules and regulations. Appellant believes that as long as proposal

[sic] complies with FCC rules and regulations, local government may not review the appeal based on adverse health affects [sic].

The equipment will be monitored at all times, with monthly service checks. If any problems arise, the equipment will be immediately shut down. The height of this chimney is high enough in elevation to provide ample signals in this coverage area.

Appellant believes that their proposed use is needed to offer reliable quality services to their customers. The proposed use will not hinder other radio frequency devices within this same area. Service technicians drive SUV's with equipment that can be carried by hand and will not block nor hinder traffic in the area.

There will be equipment affixed to the chimney with coaxial cable. The wind load will not have an adverse affect on the chimney nor cause the chimney to collapse. The proposed antennas will be hard to see, as they will be painted to match the brick of the chimney. There will be equipment stored on the 2nd floor of the church. Appellant has not requested permission for any co-location at this site.

T-Mobile further believes that in order to remain competitive in this wireless industry, they must be able to provide adequate services to their customers. T-Mobile also feels that should an emergency arise in this area, their customers will be negatively affected due to no or poor signals on their cellular phones.

T-Mobile feels that their proposed use does comply with the conditional use standards, as the use will comply with all Building, Zoning and FCC rules and regulations, the use not [sic] create additional traffic in the neighborhood, the use will not hinder property values, the use will enhance services for T-Mobile customers and would not be detrimental to the neighborhood.

Appellant's proposal will have a negative

> impact on the health of the children and residents of this neighborhood.
>
> Appellant's use will cause their property values to decrease. Tenants have promised not to renew their leases with one landlord should this use be allowed.
>
> Residents feel that the Appellant does not respect their concerns nor their neighborhood and the Appellant should locate in a more commercial and industrial district because the antennae will be very visible and that there is nothing else in the neighborhood as obtrusive as this installation will be.
>
> The proposed antennas would be less than 10 ft from other wires and antennas, presenting a possible fire hazard should any antenna fall on another antenna and/or wire.
>
> Residents feel that these antennas will generate radiation, which is a dangerous concern of possible cancer in the children and the adults of this area and that they will be involuntarily forced to endure the harmful effects of cellular antennas.
>
> The installation would interfere with the egress of the alley, the service technicians would generate noise in their neighborhood, further noise would be generated by the exhaust and cooling system for the antennas and equipment, there could be a problem from falling debris and the antennas could cause interference with neighboring home tv's, radios, pacemakers, baby monitors, etc.

(Rev. Joint Stip. of Facts, Exh. 1, paras. 7-19.)

24. Prior to the time that T-Mobile filed its application for a building permit, the City had granted permission to personal wireless service providers, other than T-Mobile, for the construction of personal wireless services facilities within the city limits of the City without requiring the issuance of a

Conditional Use Permit.

25. At all times relevant, T-Mobile incurred compensatory damages in excess of $36,000.00 in the placement and construction of a personal wireless service facility necessary to comply with the requirements of the license issued by the FCC.

**Conclusions of Law**

1. This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1331 in that this civil action arises under the laws of the United States, and namely, the Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over those claims arising under Missouri law which are so related to the claims arising under this Court's original jurisdiction.

2. Venue is proper in this district under 28 U.S.C. § 1391(b).

A.  *Count I -- Telecommunications Act*

3. The Telecommunications Act of 1996 (TCA) was enacted "to promote competition and higher quality in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies." City of Ranchero Palos Verdes, Cal. v. Abrams, ___ U.S. ___, 125 S. Ct. 1453, 1455 (2005) (internal quotation marks and citation omitted).

> One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless

> communications, such as antenna towers. To this end, the TCA amended the Communications Act of 1934, 48 Stat. 1064, to include § 332(c)(7), which imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities, 110 Stat. 151, codified at 47 U.S.C. § 332(c)(7). Under this provision, local governments may not "unreasonably discriminate among providers of functionally equivalent services," § 332(c)(7)(B)(i)(I), take actions that "prohibit or have the effect of prohibiting the provision of personal wireless services," § 332(c)(7)(B)(i)(II), or limit the placement of wireless facilities "on the basis of the environmental effects of radio frequency emissions," § 332(c)(7)(B)(iv).

Id. at 1455-56.

4. The TCA requires local governments to act on requests for authorization to locate wireless facilities "within a reasonable period of time," § 332(c)(7)(B)(ii), and provides an expedited review process in the event a request is denied, § 332(c)(7)(B)(v).

5. The TCA requires that any decision by a local government to deny a provider's request must "be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

6. Substantial evidence is not a large or considerable amount of evidence; however, it nevertheless must be more than a mere scintilla of evidence. Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township, 181 F.3d 403, 408 (3d Cir. 1999); Sprint Spectrum L.P. v. Jefferson County, 968 F. Supp. 1457, 1468-69 (N.D. Ala. 1997). Substantial evidence is "relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Omnipoint Corp., 181 F.3d at 408 (internal quotation marks and citation omitted).

7. Under the TCA, the government bears the burden of showing that substantial evidence supported its decision to deny a provider's request to construct a wireless facility. See Sprint Spectrum L.P. v. Town of Easton, 982 F. Supp. 47, 49 (D. Mass. 1997); 47 U.S.C. § 332(c)(7)(B)(iii).

8. In a written decision, the City's Board of Adjustment affirmed the denial of T-Mobile's application, with such denial having been based on the proposed use's inability to conform to § 26.80.010(E)(1-3) of the City's Zoning Code. This adverse determination was based on only the concerns offered by area residents. Generalized concerns of citizens do not rise to the level of substantial evidence. Iowa Wireless Servs. v. City of Moline, 29 F. Supp. 2d 915, 922 (C.D. Ill. 1998).

9. Further, the residents' concerns articulated here were speculative at best, such as the *promise* that residential leases would not be renewed, the *feeling* that the antennae would be very visible, the proposed antennas' *possible* contact with other wires and antennae, the *feeling* that adverse health effects may result, etc. Although the Court does not question the sincerity of the residents' concerns, and certainly does not intend to diminish their significance, the record nevertheless is devoid of any *evidence* providing a factual basis for such concerns. As such, it

cannot be said that any evidence, let alone substantial evidence, supported the City's adverse determination. See Telespectrum, Inc. v. Public Serv. Comm'n of Ky., 227 F.3d 414, 424 (6th Cir. 2000) (and cases cited therein) (concerns from credible, sympathetic witnesses regarding exposure to harmful emissions and declination of property value were nothing more than unsupported opinions); see also Omnipoint Corp., 181 F.3d at 409 (general and speculative concerns offered by opponents with no supporting evidence do not constitute substantial evidence); USOC of Greater Iowa, Inc. v. City of Bellevue, Neb., 279 F. Supp. 2d 1080, 1086 (D. Neb. 2003) (and cases cited therein). This is especially true here where T-Mobile supported its permit request with detailed documentation and testimony from professional engineers addressing the questions put forth by the City as well as the concerns of the residents, and the City articulated no reason to discount such evidence. See USOC of Greater Iowa, 279 F. Supp. 2d at 1086; cf. Group EMF, Inc. v. Coweta County, 131 F. Supp. 2d 1335 (N.D. Ga. 2000) (generalized concerns cannot constitute substantial evidence when faced with substantiated and unrebutted evidence to the contrary); OPM-USA, Inc. v. Board of County Comm'rs of Brevard County, 7 F. Supp. 2d 1316, 1327 (M.D. Fla. 1997) (where party has done everything possible to support application and "it appears from the record that there is nothing [the applicant] could have done which would have met with approval of the Board," denial under those circumstances is not based on substantial evidence in a written

record).

10. To the extent the City determined to deny plaintiff's application due, in part, to potential adverse health effects, the undersigned notes

> that concerns of health risks due to the emissions may not constitute substantial evidence in support of denial by statutory rule, as no state or local government or instrumentality thereof may regulate the construction of personal wireless facilities "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

Telespectrum, Inc., 227 F.3d at 424 (quoting 47 U.S.C. § 332(c)(7)(B)(iv)); see also Omnipoint Corp., 181 F.3d at 409 (Board may not consider alleged health effects).

11. Other than the general and speculative concerns expressed regarding aesthetics, property value and health conditions, the record shows no evidence to have been presented to the City to support its determination to deny to T-Mobile its request for a Conditional Use Permit for the installation of its proposed Communications Facility on the Church Site.

12. The City has thus failed to show that its denial of T-Mobile's application for Conditional Use Permit for the installation of the proposed Communications Facility on the Church Site was supported by substantial evidence contained in a written record.

13. The City's decision to deny T-Mobile's request to place and construct the proposed Communications Facility on the Church

Site violated 47 U.S.C. § 332(c)(7)(B)(iii).

14. Injunctive relief directing the City to grant T-Mobile the permit(s) necessary to allow installation of the Communications Facility is an appropriate remedy under the TCA and plaintiff's request therefor should be granted. See Omnipoint Corp., 181 F.3d at 409-10 (citing Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999)); USOC of Greater Iowa, Inc., 279 F. Supp. 2d at 1088-89.

15. To the extent plaintiff seeks compensatory damages for defendant's violation of the TCA, the undersigned notes that the Supreme Court in Abrams, although recognizing there to be differences among the lower courts as to the availability of such relief under the TCA, and indeed expressing doubt about such relief ("[t]he remedies available, moreover, perhaps do not include compensatory damages"), nevertheless declined to determine the question. Abrams, 125 S. Ct. at 1459 and n.3. Therefore, in the absence of authority directing otherwise, and upon the apparent agreement of the parties as demonstrated by their jointly submitted proposed Judgment, Order and Decree, compensatory damages should be awarded to the plaintiff under the TCA. See Primeco Pers. Communications Ltd. P'ship v. Mequon, 352 F.3d 1147, 1152-53 (7th Cir. 2003) (TCA's conferral of a right to sue is presumed to entitle the successful plaintiff of usual remedies of damages and injunctive relief) (citing Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 66-76 (1992)).

16. The Supreme Court has explicitly stated, however, that the remedies available under the TCA "certainly do *not* include attorney's fees and costs." Abrams, 125 S. Ct. at 1459-60 and n.4 (emphasis added). As such, plaintiff's request for an award of attorney's fees and costs under the TCA should be denied.

B. *Count II -- Damages Under 42 U.S.C. § 1983*

17. Judicial remedies provided under the TCA preclude resort to 42 U.S.C. § 1983. See generally Abrams, 125 S. Ct. 1453 (2005). As such, plaintiff's claims brought under § 1983 in Count II of its Complaint should be dismissed. Id.

C. *Count III -- Mo. Rev. Stat. §§ 89.110, 536.100*

18. Section 536.100 provides for judicial review of agency action upon which the court "shall render judgment affirming, reversing, or modifying the agency's order . . . and may order the agency to take such further action as it may be proper to require[.]" Mo. Rev. Stat. § 536.100.5. Section 89.110 specifically provides for such review of a decision by the Board of Adjustment, and authorizes the court to "reverse or affirm, wholly or partly, or [] modify the decision brought up for review." Section 89.110 also provides for an award of costs but directs that such an award "shall not be allowed against the board unless it shall appear to the court that it acted with gross negligence, or in bad faith, or with malice in making the decision appealed from."

19. For the reasons stated above with respect to plaintiff's claims arising under the TCA, plaintiff's request for judicial

- 17 -

review and injunctive relief under Mo. Rev. Stat. §§ 89.110, 536.100 should be granted. Plaintiff has presented no evidence or argument, however, demonstrating that the Board of Adjustment acted with gross negligence, in bad faith, or with malice in making the decision from which plaintiff seeks redress, and nothing before the Court makes it appear so. As such, costs shall not be allowed against the City.

D.  *Count IV -- Sunshine Act*

20. Under Mo. Rev. Stat. § 610.027.2, a party seeking judicial enforcement of Missouri's Sunshine Act, Mo. Rev. Stat. §§ 610.010, et seq., bears the initial burden of demonstrating to the Court that the governmental body in question is subject to the requirements of the Sunshine Act and violated its terms. See Jones v. Housing Auth. of Kansas City, Mo., 118 S.W.2d 669, 673 (Mo. Ct. App. 2003) (citing Spradlin v. City of Fulton, 982 S.W.2d 255, 264 (Mo. banc 1998)); see also generally American Eagle Ins. Co. v. Thompson, 85 F.3d 327, 331 (8th Cir. 1996) (determining which party in civil action bears burden of proof). Where a plaintiff fails to meet its burden of proof, judgment is properly entered for the defendant. See Aetna Cas. & Sur. Co. v. General Elec. Co., 758 F.2d 319 (8th Cir. 1985).

21. The plaintiff here has presented no evidence or argument to the Court to support its claim raised in Count IV of its Complaint that defendant violated Missouri's Sunshine Act. Because plaintiff failed to meet its burden of proof on this claim,

defendant is entitled to judgment thereon.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff Voicestream PCS II Corporation, d/b/a T-Mobile, shall recover on Counts I and III of its Verified Complaint for Writ of Mandamus, Damages, Judicial Review, and Other Relief, to the extent plaintiff seeks judicial review and injunctive relief under the Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq., and Mo. Rev. Stat. §§ 89.110, 536.140; and compensatory relief under the Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq. In all other respects, the relief requested in Counts I and III is denied.

**IT IS FURTHER ORDERED** that plaintiff Voicestream PCS II Corporation, d/b/a T-Mobile shall not recover on Count II of its Verified Complaint for Writ of Mandamus, Damages, Judicial Review, and Other Relief, seeking relief under 42 U.S.C. § 1983, and Count II is dismissed from this cause with prejudice.

**IT IS FURTHER ORDERED** that plaintiff Voicestream PCS II Corporation, d/b/a T-Mobile's shall not recover on Count IV of its Verified Complaint for Writ of Mandamus, Damages, Judicial Review, and Other Relief, for failure to meet its burden of proof on such claim, and defendant The City of St. Louis, Missouri, is entitled to judgment thereon.

**IT IS FURTHER ORDERED** that plaintiff Voicestream PCS II Corporation, d/b/a T-Mobile's requests for attorney's fees and

costs are denied.

**IT IS FURTHER ORDERED** that defendant The City of St. Louis, Missouri's renewed Motion to Dismiss Count II of Plaintiff's Complaint and to Remand Count III of Plaintiff's Complaint to State Court, or, in the Alternative, to Hold Said Count III in Abeyance (see Order filed Apr. 26, 2005), is denied as moot.

An appropriate Judgment and Order for Permanent Injunction is filed herewith.

_____
UNITED STATES MAGISTRATE JUDGE

Dated this  _3rd_  day of August, 2005.